## THE STATE v. ABRAM, a slave.

1. The offence of mayhem may be committed without an entire mutilation of the member; but the biting off a small portion of the ear, which does not disfigure the person, and could only be discovered on close inspection, or examination, when attention was directed to it, is not mayhem under the statute.

2. An intentional and unnecessary mutilation, by a slave, of any of the members of a white person, enumerated in the statute as constituting mayhem, will be "*wilfully*" committed, within the meaning of the act. But if the slave be engaged in mortal strife, his adversary armed with a deadly weapon, and he defenceless, such a mutilation will not be considered as *wilfully* done, unless from the circumstances of the case it can be considered as having been wantonly done, when it would be deemed *wilful*, within the meaning of the act.

3. The master, or overseer, and not the slave, is the proper judge whether the slave is too sick to be able to labor. The latter cannot, therefore resist the order of the former to go to work for this reason.

Error to the Circuit Court of Dallas.

The prisoner was indicted for biting off the ear of Isaac J. Kirkendall, a white man.

Upon the trial of the cause, it was in proof, that Kirkendall, who was the overseer of the prisoner, seeing him loitering about the negro cabins, told him to go to work. The prisoner replied he was sick and unable to work, upon which the overseer felt his pulse, told him he was not sick, and again ordered him to his work. The prisoner moved off slowly, and Kirkendall struck him with his whip, which was caught by the prisoner. Kirkendall then kicked at him, and Abram caught his leg and threw him down, and whilst down, seeing that Abram was about to get upon him, drew a pistol, which Abram knocked out of his hand, by striking him with a stick. They then engaged in mutual combat, during which Abram bit off a piece of the upper part, or rim of Kirkendall's ear, and received in his own side a severe cut

from Kirkendall's knife.  Abram sustained a good character, as an obedient servant.

The prisoner, by his counsel, moved for the following charges :

1.  That if the jury believed the ear of Kirkendall was bitten off by Abram, without malice, that they could not find the defendant guilty.

2.  That if Abram was so sick that he was unable to work, he was not bound to obey an order to do so.

3.  That if he only bit off a small piece of the ear of Kirkendall, not destroying the body of it, such biting is not mayhem.   These charges the court refused to give, and the prisoner excepted.

This is now assigned as error.

The prisoner was found guilty, and sentenced to be executed.


PECK, for plaintiff in error.

1.  The court refused to charge the jury, that if they believed the ear was partly bitten off by the prisoner, but without malice, they could not find him guilty.    -

Without the proof of malice, the offence was not made out.  The charge should therefore have been given.   The statute uses the word wifully—wilfully means maliciously.   See Webster's Dictionary ;  2 Bouvier's L. Dic. 632 ;  5 Morton's Penn. Rep. 427.

2.  The court erred in refusing to charge the jury, that if the prisoner was unable to work, he was not bound to obey an order to do so.                                 .

The court erred in refusing to charge the jury, that if the prisoner bit off only a small piece of the ear, not destroying the body of it, it was not mayhem.


ATTORNEY GENERAL, contra.

1.  The master, or overseer, has full dominion over his slave, and may enforce obedience.  [State v. Mann, 2 Dev. R. 263.]   The overseer was acting lawfully, but the slave in resisting was doing an unlawful act, and guilty of the first breach of the peace.   He must then be held responsible for

the consequences. Of his sickness there was no proof—and his *alleged* sickness was no excuse for his violent resistance.

2. The law is, that the act must be "*wilful*," (as contra-distinguished from accidental,) not malicious—malice aforethought, is therefore not necessary to constitute the offence —nor is it material when the design to do the act was formed. [Clay's Dig. 472, § 4; State v. Nancy, 6 Ala. Rep. 483; State v. Simmons, 3 Ib. 497; State v. Crawford, 2 Dev. R. 425; State v. Evans, 1 Hayw. 281.]

3. As the object of the law is to punish for the evil design of the slave, and to deter others, and not to compensate for the loss of the ear, the offence is complete when a portion only of the ear is wilfully taken off; and also from the impossibility of laying down any other certain rule. Weakening or disabling a hand, or finger, is a mayhem, as well as the cutting off the same. [1 Hawk. P. C. 107, § 2.]

ORMOND, J.—The question of the right of the prisoner to challenge the grand jury, has been considered in the previous case of Clarissa, and we will therefore proceed to consider the questions presented upon this bill of exceptions.

The statute under which this indictment is framed, declares that every slave " who shall wilfully maim, put out an eye, or cut, or bite off the lip, ear, or nose of any white person, shall suffer death."

Although the statute speaks of biting, or cutting off the lip, ear, or nose, it is not to be understood that the offence may not be committed, without the entire mutilation of one of these members. The object of the statute was to provide against such a wilful mutilation of these members, as would be obvious to a casual observer, and disfigure the person, and it follows necessarily, that the cutting, or biting off a small portion of the ear, which did not disfigure the person, and could only be discovered by close inspection, or examination, when attention was directed to it, would not constitute mayhem under the statute. The evidence was, that the prisoner bit off a small piece of the upper part, or rim of the ear, and this is entirely consistent with an injury so slight and unimportant, as not to constitute the high offence punished by this

statute with death.    This statute is evidently a mere reiteration of a similar provision of the code, providing for the offence of mayhem committed by a white person, and the construction of both must be the same, as to what shall constitute the offence.    We think therefore, that the refusal of the court to charge, that the biting off a small piece of the ear, not destroying the body of it, was not mayhem, was erroneous, as we do not understand from the description of the injury inflicted, as stated in the bill of exceptions, that it amounts to a disfigurement of the person.

It is further urged by the counsel for the prisoner, that an act to constitute mayhem under the statute, must be done maliciously, which it is insisted is the proper meaning of the term wilfully, employed in the statute.

It is difficult to suppose, that one could bite off the ear of another without intending, and consequently without willing it; but as this word is found in the act, prefixed to the offence, and as the criterion by which its character is to be ascertained, it becomes necessary to ascertain its import, considered in the connection in which it is found.

We do not think it probable, that the entire absence of the will, or total unconsciousness of the act, at the time it was done, is what was intended by the use of this term, not only because this is highly improbable, but also because it would be impossible for the accused to prove such a justification, if it really existed.    That the legislature meant something different from malice is highly probable, because, when providing in the same code, for the punishment of the same offence by white persons, the act to be criminal, must be done with *malice aforethought*, and this difference of phraseology in speaking of the same offence, can only be explained by the difference of the individuals upon whom the act was to operate.    In the case of a white person, to constitute mayhem, it must be done with malice aforethought; in the case of a slave wilfully.    Although this is very satisfactory to show, that malice, in the proper legal sense of that term, is not a necessary ingredient in the offence of mayhem, committed by a slave, yet it is impossible to suppose, that it was intended that every mutilation by a slave, of those members of a white person enumerated in the statute, would, under all circum-

stances be mayhem, and therefore the inference is irresistable, that there may be such a mutilation, which was not intended by the legislature to be punished capitally.

If such an act is intentionally, and unnecessarily committed by a slave, on the person of a white man, there can be no doubt it is wilfully committed, within the meaning of the statute; but there may doubtless be cases, in which the slave obeying the mere instincts of his nature, and from his impulses as an animal, rather than from the exercise of his will as an intellectual being, might inflict an injury of this description, without its being wilful within the meaning of the statute. Slave though he be, and as such bound to obedience, and forbidden to resist those having lawful authority over him, he is nevertheless a human being, and when engaged in mortal strife, his adversary armed with a deadly weapon, and he defenceless, the law, in compassion to the infirmity of our nature, and to the instinctive dread of death, common alike to the bond and the free, would attribute such a mutilation of the person of a white man to the instinct of self defence, in which the will did not co-operate; unless from the circumstances of the case, it could be inferred, that it was wantonly done; when there can be no doubt it would be wilful, within the meaning of this act.

To hold otherwise, would indeed be to reduce the slave, to a level with the brute creation.

In discussing this important and delicate question, which is surrounded on all sides by embarrassment, and difficulty, we have confined ourselves to the application of the facts of the case before us, to the statute under which the indictment is found. That the legislature did not mean, that every mayhem enumerated in the statute, should be punished capitally, without regard to the attending circumstancos, is we think self-evident; and that it was not intended by the term *wilful*, to exclude those acts only, which were purely accidental, and without blame of any kind, appears to be equally certain; and there appears to us to be no middle ground, between the construction we have placed upon it, or making it wholly inoperative.

The charge moved for, that if the prisoner was so sick as to be unable to work, he was not bound to obey the command,

of the overseer to go to work, is entirely untenable.   As a necessary consequence of the condition of slavery, as it exists with us, the master, or the overseer representing him, and clothed with his authority, must be the judge of the capacity of the slave to labor.   Without this right on the part of the master, the condition of slavery does not exist, and with it, under the protection of the law, the influence of public opinion, and the unerring suggestions of self interest, the slave is in no danger of abuse from this cause.

For the error, as herein set forth, the judgment must be reversed, and the cause remanded for another trial.