# Harold v. The State.

## *Murder.*

(Decided January 4, 1915.   67 South. 761.)

1. *Homicide; Self-Defense.*—To justify a killing, defendant must not only have been free from fault in bringing on the difficulty, but at the time he struck the fatal blow he must have been in imminent peril of losing his own life, or suffering great bodily harm, and the conditions must have been such that he could not have retreated without increasing his danger.

2. *Same.*—A defendant asserting the doctrine of self-defense has the burden of showing his inability to retreat, and in the absence of such a showing, charges asserting that he was under no obligation to flee, and had the legal right to stand his ground and kill his adversary, should have been refused.

3. *Same.*—An attack with brass knucks made by an intoxicated man cannot be said to be so manifestly felonious as warranting his killing without an attempt on defendant's part to retreat.

4. *Same.*—Unless the circumstances were such that a defendant entertained a reasonable belief that it was necessary to kill the deceased to save his own life, defendant should have retreated on being attacked; an irrational belief, however honest, will not suffice.

5. *Same.*—Where there was no evidence which would have justified the jury in finding that a defendant entertained a reasonable belief that he could not have retreated without increasing his peril, a charge as to defendant's rights under those circumstances is abstract and properly refused.

6. *Same.*—A charge that if the jury could not say whether defendant acted upon a reasonable belief that it was necessary to take the life of deceased to save himself, or that he cut before such "peding" necessity arose, is properly refused as being unintelligible.

7. *Same; Degrees.*—Malice must be present to constitute murder in the second degree, but is absent in manslaughter in the first degree, and a charge disregarding that essential is an incorrect statement of the law .

8. *Appeal and Error; Record; Presumptions.*—The court on appeal will presume that the record shows instructions as originally given.

APPEAL from Escambia Circuit Court.

Heard before Hon. A. E. GAMBLE.

Charlie Harold, alias, was convicted of murder in the second degree, and he appeals.   Affirmed.

The evidence sufficiently appears from the opinion of the court. The following charges were refused defendant:

(16) If the jury believe from the evidence that defendant was free from fault in bringing on the difficulty in which deceased lost his life, and that deceased made an attack upon him with a deadly weapon with murderous intent, defendant was under no obligation to flee, but had the legal right to stand his ground, and if need be kill his adversary.

(19) If the jury believe from the evidence that defendant was free from fault in bringing on the difficulty in which defendant lost his life, and reasonably apprehended death or great bodily harm to himself unless he killed deceased, the killing was justifiable.

(20) The court charges the jury that if they believe from the evidence that defendant was without fault in bringing on the difficulty, and there existed at the time in the mind of defendant a reasonable belief, honestly entertained, that there was either a real or apparent, imperious, and impending necessity to cut in order to save himself from great bodily harm, and that from the reasonable belief, honestly entertained, that deceased had dangerous weapons, retreat would only increase his danger, and defendant from such belief cut and killed deceased, then the jury must not convict defendant.

(39) I charge you that if, after looking at all the evidence in this case, your minds are left in such a state of uncertainty that you cannot say beyond a reasonable doubt whether defendant acted upon a well-founded and reasonable belief that it was necessary to take the life of deceased to save himself from great bodily harm, or death, or that he cut before such a peding necessity arose, then this is such a doubt as would entitle defendant to an acquittal, and you should so find.

[Harold v. The State.]

(41) To constitute murder in the second degree, defendant must inflict an act of violence which produces death, with intent to kill decedent, or do an act of violence which ordinarily in the usual course of events produces death or does great bodily harm. To constitute manslaughter in the first degree, defendant must have an intention to kill or inflict an act of violence which ordinarily or in the usual course of things produces death or great bodily harm.

LEIGH & CHAMBERLAIN and ED. LEIGH MCMILLAN, for appellant. Charges 16 and 19 should have been given. —*Beasley v. State,* 181 Ala. 28; *Cook v. State,* 5 Ala. App. 112. Charge 20 should have been given.—*McCain v. State,* 160 Ala. 37. Charge 41 should have been given. —*Fowler v. State,* 161 Ala. 1.

R. C. BRICKELL, Attorney Beneral and T. H. SEAY, Assistant Attorney General, for the State. Where a defendant goes upon the stand in his own behalf, he may be cross-examined as to his motive or intent in committing the crime.—*Linnehan v. State,* 120 Ala. 293. Counsel discuss the charges refused, with the insistence that the court's action was proper, but they cite no further authority.

THOMAS, J.—The only insistence of appellant's counsel in this case is that the trial court erred in refusing written charges 16, 19, 20, 39, and 41 requested by appellant, in disposing of which insistence it is necessary that we review briefly the evidence.

Ignoring the case as made by the evidence for the state, and taking as true the defendant's own version, it appears that, shortly before the difficulty, deceased was at a livery stable in the town of Brewton, where he

had some whisky, of which he had been drinking when defendant came up and upon invitation of deceased also took a drink; that while there a third party present, who was a cripple, called defendant a d—— liar about a matter incidentally arising and immaterial here, whereupon defendant knocked this party down; that deceased, upon remarking that defendant should not impose on a cripple in his presence, struck defendant with his first, whereupon defendant then knocked deceased down also; that immediately after getting up off of deceased, defendant went to a pump out in the street to wash his face and hands, when deceased followed behind him; and that, as defendant was bending over washing at the pump, the deceased hit him a glancing lick on the head from behind with a pair of brass knucks that were on his hand; but that, missing his full aim, he fell over defendant onto the ground, where defendant seized him, and, after holding him there for a while, got up to go home, telling deceased to leave him alone; that deceased then got up and followed, endeavoring all the while with a pair of brass knucks on his hand to hit defendant, who was backing off, whereupon defendant took out his knife and stabbed the deceased to death. In the language of defendant: I cut him when he struck me over the eye. When I cut him, he was coming towards me, and had a pair of knucks on his hand. He kept moving towards me, trying to hit me. I think I made three passes at him. It was all over in a minute, I reckon."

This happened out in the open street, where, so far as appears, there was nothing to prevent the defendant from retreating and thereby avoiding the blows aimed at him by deceased, who, it seems, was partly intoxicated, and consequently not only less able to use effectively the knucks, but less able to pursue the defendant if the latter had retreated. For the law to justify defendant in

killing deceased, the defendant must not only have been free from fault in bringing on the difficulty, but he must, at the time he struck the fatal blow, have been in imminent peril of losing his own life or of suffering great bodily harm at the hands of his assailant, and the conditions surrounding him must have been such that he could not have retreated without increasing his danger, or such as would have appeared so to a reasonable man circumstanced as was the defendant.—1 Mayf. Dig. 800 et seq.

The burden of showing his peril and his inability to retreat rested upon defendant, and even if we accept as true his own version, it does not appear that the character and manner of the assault made upon him by deceased, nor that the kind of weapon used in that assault, nor that the place and circumstances of that assault, were such as to relieve him of the duty of retreating or to justify him in taking the life of his assailant; consequently, the court did not err in refusing charges 16 and 19, which contained no hypothesis with reference to the matter of retreat.—1 Mayf. Dig. 800 et seq.

We find nothing to conflict with these views, in the cases of *Beasley v. State,* 181 Ala. 28, 61 South. 259, *Cook v. State,* 5 Ala. App. 11, 59 South. 519, and *Storey v. State,* 71 Ala. 337, cited us by appellant, which assert the doctrine that: "When the assault is manifestly felonious in its purpose and forcible in its nature, as in murder, rape, robbery, burglary, and the like,  *   *   * the party attacked is under no obligation to retreat."

This is but a reiteration of the well-known common-law principle, as declared in Russell on Crimes, that: "A man may repel force with force in defense of his person, habitation, or property, against one who manifestly intends and endeavors, by violence or surprise, to commit a known felony upon either. In these cases he

is not obliged to retreat, * * * [but] the intent to murder, ravish, or commit other felonies attended with force or surprise, should be apparent and not be left in doubt; so that if A. make an attack upon B., it must plainly appear by the circumstances of the case (as the manner of the assault, the weapon, etc.) that the life of B. is in imminent danger; otherwise, his killing the assailant will not be justifiable self-defense."—Russell on Crimes, vol. 3 (International Ed. 1896), pp. 213, 214.

In the *Beasley Case, supra,* which is the only one of the cases mentioned as cited us by appellant where the doctrine was applied (the other two—the Cook and Storey Cases—having merely incidentally declared it), the facts were entirely different from those here. There the assault upon defendant was made with a gun, which is a known deadly weapon, a discharge from which could have effectively reached the the defendant even if he had retreated. Therefore, under the circumstances of that case, the court held in effect that the assault upon defendant, if the jury believed the evidence, was manifestly felonious, its character, judged from the weapon presented and the manner of its attempted use by deceased, clearly disclosing an intent on his part to murder defendant; since, as a matter of law, it is to be presumed that every man intends the known usual and natural consequences of his acts, and since it is known that the usual and natural consequences of shooting a person with a gun are to kill him, and that if he retreats in the open his danger is increased. This cannot be said of an assault upon a person in the streets with a pair of knucks. Hence we cannot say as a matter of law that the assault made upon the defendant in this case, even when looking alone to his own evidence, was "manifestly felonious." Hence charges 16 and 19 were abstract as applied to the facts of this case.

To relieve the duty to retreat, the defendant must, as said, not only have been free from fault in bringing on the difficulty, but the assault upon him by deceased must have been coupled with an intent and capacity, or seem- ing capacity, to take life or to inflict some great bodily harm. It must appear that the assailant, by his conduct and acts, impressed the mind of the defendant that it was the deceased's purpose to kill at the time that the fatal blow was struck in defense. The deceased must not only have had the means at hand for effecting a deadly purpose, but it must have appeared from some act or demonstration of his that it was his intention, at the time of the killing, to carry out his purpose, thereby inducing a reasonable belief on the part of the defend- ant that it was necessary to deprive deceased of his life in order to save his own.—*Lewis v. State,* 51 Ala. 1.

It must have been a reasonable belief, honestly en- tertained, and begotten by attendant facts and circum- stances of such a character as to justify such a belief in the mind of a reasonable man. An irrational belief, one not authorized by the facts and circumstances then at- tending defendant, however honestly entertained, will not answer.—1 Mayf. Dig. 802, § 21.

Hence charge 20 was properly refused, if for no other reason, because it was abstract, in that there was noth- ing in the evidence which would have justified the jury in finding that defendant entertained a reasonable be- lief that he could not have retreated without increas- ing his peril, even granting that his peril was shown to have been such as would have justified the killing in the event there was no mode of escape open to him by re- treat. The defendant, failing, as he did, to show facts and circumstances sufficient to furnish a foundation for a belief in the mind of a reasonable man, environed as he was, that he could not retreat, is not in position to

complain of the refusal of the charge. We are not to be understood, however, as intending to hold that the charge even abstractly asserts a correct proposition of law. While it probably meets every criticism aimed at a similar charge in *McCain v. State,* 160 Ala. 38, 49 South. 361, yet we are of opinion that the charge is faulty for other reasons than those pointed out in said case. The necessity which will justify the taking of human life, it is true, need not be real, provided it is apparently so to the mind of a reasonable man; but the slayer must honestly and reasonably believe it to be real, and not merely that it appears so. His belief, although reasonable and although honest, that such necessity is apparent, will not therefore excuse him; yet the charge in effect asserts that if he reasonably and honestly believes that it is either real or apparent it will excuse him.

One clause in charge 39, even if the charge is not otherwise faulty as applied to the facts of this case (see *Charlie Langham v. State, infra* 68 South. 504), is sufficient for want of sense in such clause to have justified the court in refusing the charge as a whole. This clause in the transcript of the charge reads, "or that he [defendant] cut before such a *peding* necessity arose." Whether this word *"peding"* appeared in the original charge, or whether by typographical error in copying the charge the clerk substituted that word for *"impending"* or some other word, we do not know. Our sole guide is the record, and we must presume for purposes here that the original was as is what purports to be its copy in the transcript.

Charge 41 was properly refused, because the definition of "murder in the second degree" and of "manslaughter in the first degree," as given in the charge, is the same. While such definition is correct, as far as it goes, yet it fails in completeness and fails to distinguish

6 CA

between these two degrees of homicide, and would consequently have left the impression on the minds of the jury that there is no difference between them, and that murder in the second degree and manslaughter in the first degree were one and the same thing in law; whereas, in fact murder is characterized by malice, which the charge ignores, and manslaughter by an absence of malice, which the charge likewise ignores.

We have discussed the only errors insisted upon, and, as we find none in the record, the judgment of conviction and sentence of 10 years is affirmed.

Affirmed.