# King v. The State.

### Murder.

(Decided May 18, 1915.  Rehearing denied June 1, 1915.
69 South. 345.)

1. *Homicide; Evidence.*—Evidence that deceased was a police officer and was on his beat at the time of the difficulty, was admissible as bearing on whether his manifest purpose in drawing a pistol was to commit an immediate deadly assault upon defendant, the evidence otherwise showing that defendant came up to deceased while on his beat in front of a dance hall, and shot deceased as deceased advanced towards him, the deceased having put his hand behind him as if to draw a pistol, after a colloquy with defendant and his companion as to whether his companion was drunk.

2. *Same; Self-Defense.*—Where defendant shot and killed a police officer because the later drew a pistol on him, defendant could not excuse the killing on the ground of self-defense unless the act of the officer in drawing his pistol was manifestly felonious, done for the purpose of shooting defendant, or would have appeared so to a reasonable man circumstanced as was the defendant.

3. *Witnesses; Examination; Explanation.*—After testifying that he had seen the killing, and having admitted on cross-examination by the state that he had stated to the chief of police who was investigating the crime, that he had not seen the killing, it was error to sustain the objection on re-direct to the same witness to the question as to why he had done so, and it was also error to refuse to permit the witness to explain why, after leaving the scene of the homicide, he asked another person where the shooting was.

4. *Homicide; Self-Defense.*—A defendant seeking the protection of the doctrine of self-defense must have been himself without fault, and cannot invoke the doctrine, even if deceased approached him in a hostile manner, whether the necessity to take his life was real or

[King v. The State.]

only apparent, if it was brought about by the design, contrivance or fault of defendant.

5. *Same.*—Where the court purported to deal only with self-defense, and not with reasonable doubt, or the degree of proof necessary to convict, a charge correctly stating the doctrine of self-defense was not rendered faulty because of a failure to state that the jury must acquit if they have a reasonable doubt of defendant's guilt.

6. *Same; Overt Act.*—Where the evidence showed that defendant shot the police officer while such officer was advancing upon him with his hands behind his back as if about to draw a pistol just after a colloquy with defendant as to whether defendant's companion was ·drunk, the question of whether the drawing of his pistol by the officer, if he did draw it, was an overt act, was one for the jury.

7. *Same.*—Where some of the witnesses testified that deceased drew a pistol first, and others testified that defendant was the first to draw his pistol, that question was properly submitted to the jury on the issue of self-defense.

8. *Same; Instruction.*—A charge asserting that while the law says that to make the plea of self-defense available, the defendant must be free from fault in bringing on the difficulty, yet the law does not require him to establish such fact by a preponderance of the evidence, and if after considering all the evidence the jury have a reasonable doubt growing out of any part of the evidence whether or not defendant was free from fault in bringing on the difficulty, then the defendant was entitled to avail himself of the plea of self-defense, was involved and confusing, and properly refused.

9. *Same.*—Where self-defense is an issue, the defendant need not prove freedom from fault in bringing on the difficulty; but where the evidence for the prosecution shows an intentional killing, the defendant must show a pressing necessity to take the life of deceased, and an inability to retreat without increasing his danger, and having done so, if the state would avoid the legal effect of the same, the burden is shifted to the state to show that defendant was at fault.

10. *Same.*—A charge asserting that if defendant, with no intention of bringing on the difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration by drawing or attempting to draw a weapon, and if defendant was so close to deceased as to render flight hazardous, then the law does not and did not require the defendant to endanger his safety by attempting. the flight, was properly refused as argumentative.

11. *Same.*—A charge asserting that the law is a reasonable master and recognizes love of life as natural and legitimate, and permits every one who is without fault, and who has adopted every reasonably safe expedient to avert the necessity to take the life of an assailant rather than to lose his own, was properly refused as argumentative.

12. *Same.*—A charge asserting that if from the facts and circumstances proving the killing, it could be deduced that defendant acted in self-defense when he fired the fatal shot, then no burden rested upon defendant to prove his plea of self-defense, failed to set out the elements of self-defense, and in consequence referred a question of law to the jury, and was properly refused.

[King v. The State.]

APPEAL from Tuscaloosa County Court.

Heard before Hon. BERNARD HARWOOD.

Tossie King was convicted of manslaughter, and he appeals. Reversed and remanded.

The facts sufficiently appear. The following charge was given for the state: (3) The court charges the jury that, to make the plea of self-defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self-defense, even if the deceased was approaching him in a hostile manner, and whether the necessity to take the life of the deceased was real or only apparent, if brought about by the design, contrivance or fault of the defendant, he cannot be excused on the plea of self-defense.

The following charges were refused the defendant: (B) The drawing of his pistol by Thrower, if you believe from the evidence that he did draw it, was an overt act; and if you further believe from the evidence that King was free from fault in bringing on the difficulty, that there was no reasonable avenue of escape without greatly increasing the danger, and that King fired the fatal shot under the reasonable belief that his life was in danger, or that he was in danger of suffering great bodily harm, then you must find the defendant not guilty.

(5) While the laws says that, to make the plea of self-defense available, the defendant must be free from fault in provoking or bringing on the difficulty, yet the law does not require him to establish such fact by a preponderance of the evidence; and if, after considering all the evidence in the case, you have a reasonable doubt, growing out of any part of the evidence, as to whether or not the defendant was free from fault in provoking

and bringing on the difficulty, then the defendant is entitled to avail himself of the plea of self-defense.

(13)   Same as 5, practically.

(6)   If the defendant, with no intention of bringing on a difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration by drawing or attempting to draw a weapon, and if the defendant was in such proximity to the deceased as to render it hazardous to attempt flight, then the law does not and did not require the defendant to endanger his safety by attempting flight.

(15)   The law is a reasonable master; it recognizes love of life as a natural and legitimate sentiment, and permits every one who is without fault, and who has adopted every reasonably safe expedient to avert the necessity, to take the life of his assailant rather than lose his own.

(7)   If from the facts and circumstances, which prove the killing of deceased, it can be deducted that the defendant acted in self-defense when he fired the fatal shot, then no burden rests upon the defendant in this case to prove his plea of self-defense.

(16)   Practically same as 7.

J. MANLEY FOSTER, and McKINLEY, McQUEEN, ALDRIDGE & SNOW, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General for the State.

THOMAS, J. —The defendant, who was indicted for murder in the first degree, objected to being put on trial at the time he was put upon trial, because at such time five months had not elapsed since the commission of the offense—grounding this objection upon the authority of

a local act which provides, among other things, in substance that no defendant shall be put to trial for any offense which may be punishable capitally before the expiration of five months after the commission of the alleged offense, unless defendant consent in writing for a trial within a shorter time.—Local Acts 1907, p. 498.

Our Supreme Court, in the case of *Barnett v. State,* 165 Ala. 62, 51 South. 299, have declared this provision to be void, because, as stated by them, of the failure of the legislative journals to show that notice of the proposed local act containing the provision was published as required by section 106 of the Constitution. With reference to this matter, our Supreme Court said: "The journals show an affidavit that 'the above notice was published,' etc., but the notice is not set out in the journal."

Our attention is now called to the fact by appellant's counsel that while no notice is set out in the journals above the affidavit referred to, as was alleged in the affidavit, yet there is a notice set out below and immediately following the affidavit in the journals. This notice, howover, is, in our judgment, so limited in scope by its verbiage as to amount to no notice at all that the Legislature would be asked to pass the particular provision of the act here relied on. That notice reads as follows: "Notice is hereby given that a bill will be introduced at the coming session of the Legislature of Alabama, which will convene on January 8, 1807, to amend a local law establishing the Tuscaloosa county court, found on pages 878, 879, 880 of the Local Laws for the years 1898-1899. The said proposed amendment will be substantially as follows: *That no tax fee of five dollars shall be taxed or collected in any cause on the equity side of the said court."*

Certainly such a notice furnished no information whatever that the local act mentioned in the notice would also be amended so as to insert in it the provision here under consideration—one preventing the trial in said county court of any defendant, charged with a capital offense, until after the expiration of five months from the commission of the offense.—Const. § 106; *State v. Brock*, 180 Ala. 508, 61 South. 646; *State v. Tunstall*, 145 Ala. 481, 40 South. 135; *Uniontown v. State*, 145 Ala. 476, 39 South. 814, 8 Ann. Cas. 320; *Law v. State*, 142 Ala. 62, 38 South. 798; *Ensley v. Cohn*, 149 Ala. 316, 42 South. 827; *Thomas v. Gunter*, 170 Ala. 165, 54 South. 283.

We are not to be understood as intending ourselves. to declare the provision unconstitutional, for this court is without authority to strike down any statute (Gen. Acts 1911, p. 449), that being the prerogative of our higher court; but in what we have said we have merely meant to suggest an addtional reason as to why the holding of our higher court to the effect that the provision is unconstitutional is correct.

(1) The appellant was convicted of manslaughter in the first degree and given a sentence of eight years. The evidence for the state tended to show that the deceased, at the time he was killed by defendant, was a police officer in the city of Tuscaloosa, and was patrolling in the discharge of his duty, in front of a dance hall, which was on his beat; that just before the difficulty between him and the defendant he had seated himself on a bench on the street in front of such hall, when the defendant, in company with one Bonifay, came out of the hall; and that, as they came out and passed deceased, deceased remarked to Bonifay, who had stumbled or was staggering, that he (Bonifay) was drunk

[King v. The State.]

and had better go home, or he might have to arrest him; that Bonifay and defendant then went on together up the street some yards, when they shortly turned around, and, coming back to where deceased was seated, defendant asked deceased (in substance) if he (deceased) said that Bonifay was drunk, or looked like he was drunk; that deceased replied, "Yes, he is drunk;" that . defendant replied, "He doesn't look like a drunk man to me," that when this was said deceased commenced getting up from his seat on the bench, throwing both of his hands behind him, and advanced towards defendant, when the shooting shortly afterwards commenced, but which the state's witnesses were unable to describe any further than as stated, because they ran.

The defendant's witnesses testify that as deceased advanced towards defendant he (deceased) pulled his pistol from his pocket, and that just as he did so defendant, upon saying, "Don't do that," pulled his own pistol and commenced to fire at deceased, inflicting upon him, in front, four wounds, which produced his immediate death—one in the left chest, one in the right arm, one in the left arm, and one in the leg. The deceased's pistol, which was found three or four feet from him after he fell, had not been fired at all.

The defendant earnestly insisted that the trial court committed prejudicial error in permitting the state, over the objection and exception of defendant, to show that deceased was a police officer and was on his beat at the time of the difficulty.

"Whatever tends to shed light on the main inquiry, and does not withdraw attention from such main inquiry by obtruding upon the minds of the jury matters which are foreign or of questionable pertinency, is, as

a general rule, admissible evidence."—*Gafford v. State,* 122 Ala. 62, 25 South. 10.

As shedding light upon the main inquiry in the case at bar, which was as to whether the deceased first drew a pistol, or, if he did do so, whether it was done with the *manifest* purpose of committing an immediate dead- ly assault upon the defendant, we think it was entirely competent for the state to prove, in connection with the other facts, before detailed, as to the circumstances under which and how the difficulty arose, and in con- nection with the further fact that deceased's pistol was not fired at all, that deceased was a policeman engaged as such on his beat at the time.—*Perry v. State,* 8 Ala. App. 7, 62 South. 392.

(2) What was deceased's purpose and motive in drawing his pistol, even assuming that he drew it before defendant did his? Was it his purpose to instantly shoot, without further cause or provocation, the defendant, who had done nothing more, he claims, than question deceased's judgment as to the drunkenness of defendant's companion, or was it deceased's purpose—having inter- preted that questioning of his judgment by defendant as indicating a disposition on the part of the defendant to resent the imputation upon his (defendant's) com- panion and to raise a difficulty—to prevent such a diffi- culty by drawing his pistol and thereby showing to de- fendant and his companion that he (deceased) was arm- ed and in a position to enforce his authority as an offi- cer and could not be deterred therefrom? Defendant had no right to shoot deceased, although the latter first drew his pistol, unless deceased's purpose in so draw- ing his pistol was *manifestly* felonious—that is, unless *manifestly* his purpose was to shoot defendant, or would have appeared so to a reasonable man circumstanced as

was defendant.—*Harold v. State,* 12 Ala. App. 74, 67 South. 761, and cases there discussed.

In determining this question the jury had a right to know what the defendant knew at the time, and that was that deceased was a police officer, charged with the duty of enforcing peace and good order, and that he was engaged in such duty when he suggested to defendant's companion that he was drunk and had better go home to avoid a necessity for his arrest, which would likely arise if he did not go home. Could the jury fairly determine deceased's motives and purposes in drawing his pistol first, if he did so; or could the jury fairly determine how the defendant at the time honestly viewed that act—whether as intended as a felonious assault, or merely as a precaution to prevent a breach of the peace by defendant—without knowing, in connection with the other facts and circumstances, what defendant knew, and that was that deceased was a police officer, and in and about his duties at the time? Did defendant honestly believe that deceased, in drawing his pistol, intended immediately to slay him, the defendant, and would do so then and there, or would do him great bodily harm, unless defendant acted promptly and killed deceased, or did defendant, not believing himself to be in such danger, merely seize upon the fact that deceased had drawn his pistol as a pretext for killing deceased? —*Judge v. State,* 58 Ala. 406. These were inquiries vital to the case, and the evidence mentioned sheds light upon that issue, furnishing aid in the interpretation, not only of the motives of deceased, but of the belief of defendant at the time.

The principles announced in the *Gafford Case, supra,* in the *Rigell Case,* 8 Ala. App. 46, 62 South. 977, the *Harold Case, supra,* and the *Perry Case, supra,* demon-

strates the correctness of our conclusion that the court
did not err in the admission of the evidence. Further-
more, what was said by our Supreme Court in *Johnson
v. State,* 102 Ala. 1, 16 South. 99, is directly applicable
and upholds the ruling, to wit: "Presented as this is-
sue was—in fact, in every conceivable case, in which it
becomes material to ascertain the matter of bringing
on a difficulty—the position, *occupation,* conduct, and
manner of the respective parties at the time the quar-
rel had its inception are pertinent circumstances to be
weighed in determining who was the aggressor. They
shed light on what was done, and are incidents of the
main fact."

(3) The defendant introduced as a witness one Bascum
Smith, who, after testifying that he was an eyewitness
to the difficulty and killing, and after describing it,
was asked by the state on cross-examination if he, the
witness, had not, shortly after the homicide, and near
the scene thereof, and before this trial, made a state-
ment to one Sullivan and to the chief of police of the
city of Tuscaloosa, who were investigating the crime,
that he, the witness, did not see the difficulty or the kill-
ing. The witness replied that he did make such state-
ment. On redirect examination, the defendant's coun-
sel asked the witness why he made that statement, which
statement, as seen, was contradictory to what the wit-
ness swore on this trial. The court sustained an objec-
tion by the solicitor to the question and declined to per-
mit the witness to answer it. The defendant's counsel
then stated to the court that it was their purpose in
asking the question to show by the witness that his rea-
son or motive in making that statement to the investigat-
ing officers was to conceal the fact that he had seen the
killing, and thereby avoid being summoned as a witness

in the case, which he did not wish to be. Speaking to a similar proposition, involving the same principle as here, our Supreme Court, in the case of *Johnson v. State*, 102 Ala. 1, 16 South. 99, on rehearing, have said: "In our former opinion we held that the court committed no error in ruling that the witness McCoy could not be allowed, on rebutting examination by defendant, whose witness he was, to explain his motive in telling the state's witness, Hamilton, that he knew nothing about the matter. According to our repeated rulings it is certainly well settled that witnesses are not permitted to testify to their motives, belief, or intentions, when secret or uncommunicated, such motives and intentions, when relevant, being for the determination of the jury; and it is not our purpose to question this rule, now too well settled to be disturbed. To have admitted this evidence would not, however, have infringed the rule. The witness, on his cross-examination by the state, conducted with the view of impeaching him, had, as we have seen, made an answer to the question, which, unexplained, tended to throw discredit on his evidence. To refuse to allow him, under such circumstances, to explain his motive in making the statement, would violate well-established rules. Mr. Greenleaf says: 'Common justice requires that, first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statements already given, as well as by a re-examination to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said;' and, as the author says, he may be asked the motive by which he was induced to use such expression.—1 Greenl. Ev. §§ 462, 467, And, touching the same principle, this court has heretofore held that he may be asked what induced him to give

to the person to whom he made the communication the account of it which on cross-examination he admitted he gave.—*Campbell v. State*, 23 Ala. 76; *Lewis v. Post*, 1 Ala. 69; 2 Russ. Crimes, 937. We must hold, therefore, that the court below errer in excluding this evidence."

See, also, *Anderson v. State*, 104 Ala. 83, 87 16 South. 108; *Henry v. State*, 107 Ala. 22, 19 South. 23; *Williams v. State*, 123 Ala. 39, 26 South. 521, and cases there cited.

It is apparent, therefore, that the lower court, was in error, prejudicial to defendant, in not permitting the question and answer mentioned, as well as in not permitting the witness to explain why he, after leaving the scene of the homicide, asked one Thweat where the shooting was.

(4, 5) Written charge numbered 3, given by the court at the instance of the state, correctly asserts the law as to self-defense. It was not faulty, as contended, because of its failure to go further and state, as is insisted it should have stated, in effect, as follows: "But if the jury has a reasonable doubt of defendant's guilt, they must acquit defendant."

The court, in the charge, was not dealing with the subject of proof required to convict or to establish self-defense, but only with the elements of self-defense, which are correctly stated as applicable to certain tendencies of the evidence.—1Mayf. Dig. 807, § 8.

(6, 7) Written charge B, requested by defendant, was properly refused. It was for the jury to say, under the facts and circumstances of this case, whether the drawing of his pistol by deceased amounted to an overt act, even if deceased drew his pistol first, and certainly, if he drew it only after defendant drew his and commenced to shoot, the drawing was not an overt or

offensive act but a defensive one. Though some of the witnesses say that deceased drew his pistol first, there are some facts and circumstances which afford a contrary inference, making it a question for the jury as to which of the parties first drew a weapon.

(8) Charge 3, refused to defendant, is covered by given charges A2 and A3.

(9, 10) Charges 5 and 13, refused to defendant, are similar, and were each properly refused because involved, confusing, and misleading, as well as incorrectly stating the law. The burden is not on the defendant, as the charges seem to assume, to prove, as essential to self-defense, freedom from fault in bringing on the difficulty, but is upon him, when the state shows an intentional killing, to prove a pressing necessity for taking the life of deceased and an inability to retreat without increasing his danger; then it is shifted to the state, if it would avoid the legal effect of defendant's proof, to show that defendant was at fault in bringing on the difficulty.—1 Mayf. Dig. 810, § 16.

(11, 12) Refused charges 6 and 15 were argumentative.—1 Mayf. Dig. 173, § 18; 6 Mayf. Dig. 111, § 18.

(13) Charges 7 and 16 are defective, if not for other reasons, in failing to set out the elements of self-defense, and in thereby referring questions of law to the jury.— 5 Mayf. Dig. 131, § 25.

For the error of the court in its rulings on the evidence, as before pointed out, the judgment must be reversed, which is accordingly done.

Reversed and remanded.