105 So.2d 349

**Sip NIXON**

**v.**

**The STATE of Alabama.**

**7 Div. 387.**

Supreme Court of Alabama.

Sept. 11, 1958.

Morel Montgomery, Birmingham, and Wales W. Wallace, Columbiana, for appellant.

John Patterson, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

COLEMAN, Justice.

Appellant, defendant below, was indicted for and convicted of murder in the second degree for homicide caused by an automobile operated by defendant on a public highway in Shelby County. He was sentenced to twenty-five years imprisonment in the penitentiary.

Three school children were killed. They had alighted from a school bus shortly before the accident. The bus was traveling in the direction opposite to the direction in which defendant was driving the automobile. The children, after getting out of the bus, had crossed the highway and were walking along the shoulder of the road on the right-hand side in the same direction as that in which defendant was driving the car at a speed estimated at 60 to 80 miles per hour.

There was another school bus in front of and traveling in the same direction as the one in which the children had been riding, that is, opposite to defendant's direction of travel. The evidence tended to show that defendant had come over a slight hill, and in meeting this other bus had veered to defendant's left side of the road and narrowly missed colliding with this other bus. Defendant's automobile traveled back across the highway and into a ditch on his right-hand side of the road approaching the children from their rear. Before striking them,

the automobile struck a mail box, knocked it up into the air and then proceeded 50 to 60 feet, struck the children and knocked them up into the air and some distance from the point of impact. The automobile continued on in its same direction and turned over on the right side some 60 to 300 feet from the mail box.

There was testimony tending to show that after the accident, the hood of the car was open and that underneath the hood at the back part thereof in front of the dashboard or fireboard, there was human hair. Defendant argues that the presence of hair at that place shows the hood was open prior to striking the children.

There was evidence that defendant's breath smelled heavily of alcohol immediately after the accident, and that when defendant came back to the place of the accident a few minutes thereafter, defendant said in substance, "I got to leave here." The only evidence offered by defendant was such as to tend to show his good character.

Appellant argues that the trial court erred in overruling the demurrer to the indictment, on the several grounds to the effect that the indictment fails to charge any offense known to the law, fails to charge murder in the second degree, and there is a misjoinder of offenses.

■ The indictment follows Title 15, § 259, Form 81, Code of 1940, for murder in the second degree. An indictment in substantially the same form was by this court held sufficient to charge second degree murder in Ward v. State, 96 Ala. 100, 11 So. 217.

■ Because all the homicides charged in the instant case are shown by Count I of the indictment, and also by the evidence, to have been the result of a single act done by the defendant, there is no misjoinder of offenses, or duplicity, in the indictment.

" * * * In Ben v. State, 22 Ala. 9, 58 Am.Dec. 234, a count in the indictment charging the administering of poison to three different persons by one act

was held to charge a single offense. * * *" Jones v. State, 19 Ala.App. 600, 602, 99 So. 770, 771.

The trial court did not err in overruling the demurrer.

■ Appellant duly excepted to the following portion of the oral charge of the trial court:

"If the defendant committed on the person of the deceased an act of violence which produced death and at the time he inflicted such act he had the intention to kill or intended to do an act of violence from which ordinarily in the usual course of events death or great bodily harm may be the consequence he may be guilty of murder in the second degree. Our courts have said that where the accused is himself the driver of an automobile and drives in a manner greatly dangerous to the lives of others so as to evidence a depraved mind regardless of human life he may be guilty of murder in the second degree, if his anti-social act results in death of another, and this though he had no preconceived purpose to deprive any particular human being of life. . Under such circumstances his acts are unlawful and without legal excuse, and malice may be inferred therefrom."

In Harrington v. State, 83 Ala. 9, 16, 3 So. 425, 428, this court said:

" * * * In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence. * * *"

The same or similar language is used to define manslaughter in the first degree in the following cases: Williams v. State, 83 Ala. 16, 3 So. 616; White v. State, 84 Ala. 421, 4 So. 598; Hornsby v. State, 94 Ala. 55, 10 So. 522; Reynolds v. State, 154 Ala. 14, 45 So. 894; Fowler v. State, 161 Ala. 1, 49 So.

**104**

788; Jones v. State, 13 Ala.App. 10, 68 So. 690; Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Kitchens v. State, 31 Ala.App. 239, 14 So.2d 739; Jones v. State, 33 Ala.App. 451, 34 So.2d 483; Gills v. State, 35 Ala. App. 119, 45 So.2d 44; Clayton v. State, 36 Ala.App. 175, 54 So.2d 719; Gurley v. State, 36 Ala.App. 606, 61 So.2d 137; Harris v. State, 36 Ala.App. 620, 61 So.2d 769; Turner v. State, 38 Ala.App. 73, 77 So.2d 503; Gilliam v. State, 38 Ala.App. 420, 89 So.2d 584.

In the instant case, the first statement in the portion of the charge to which exception was taken, to wit:

> "If the defendant committed on the person of the deceased an act of violence which produced death and at the time he inflicted such act he had the intention to kill or intended to do an act of violence from which ordinarily in the usual course of events death or great bodily harm may be the consequence he may be guilty of murder in the second degree."

is an incorrect statement of the law.

In Harold v. State, 12 Ala.App. 74, 67 So. 761, the trial court refused the following written charge requested by defendant:

> "(41) To constitute murder in the second degree, defendant must inflict an act of violence which produces death, with intent to kill decedent, or do an act of violence which ordinarily in the usual course of events produces death or does great bodily harm. To constitute manslaughter in the first degree, defendant must have an intention to kill or inflict an act of violence which ordinarily or in the usual course of things produces death or great bodily harm."

The Court of Appeals said:

> "Charge 41 was properly refused, because the definition of 'murder in the second degree' and of 'manslaughter in the first degree,' as given in the charge, is the same. While such defini-

tion is correct, as far as it goes, yet it fails in completeness and fails to distinguish between these two degrees of homicide, and would consequently have left the impression on the minds of the jury that there is no difference between them, and that murder in the second degree and manslaughter in the first degree were one and the same thing in law; whereas, in fact murder is characterized by malice, which the charge ignores, and manslaughter by an absence of malice, which the charge likewise ignores." 12 Ala.App. 74, 81, 82, 67 So. 761, 763.

In Harrington v. State, supra, this court also said:

> "* * * voluntary manslaughter * * * is distinguished from murder by the absence of malice, express or implied; * * *." 83 Ala. 9, 15, 3 So. 425, 428.

See also Bluitt v. State, 161 Ala. 14, 17, 49 So. 854; Jackson v. State, 74 Ala. 26, 31; Mitchell v. State, 60 Ala. 26, 32.

■ In considering defendant's exception to the oral charge, we are not unmindful of the rule that "* * * the portion of the charge here excepted to should be construed in connection with the whole charge of the court * * *." Ex parte Cowart, 201 Ala. 525, 526, 78 So. 879, 880; Ala. Digest, Criminal Law ⬤822(1). In the instant case, the oral charge undertook to state to the jury several alternative definitions of murder in the second degree. The statement which we have been considering may fairly have been understood by the jury to be one of those alternatives. The statement is incorrect because it ignores malice as an essential ingredient of murder in the second degree, and is prejudicial to defendant because it instructs the jury that if defendant did that which in law is only manslaughter in the first degree he might be guilty of the higher offense of murder in the second degree.

■ The remainder of the excepted to portion of the oral charge states a second

proposition which is also an incorrect definition of murder in the second degree although it is substantially identical with a statement in the opinion in Berness v. State, 38 Ala.App. 1, 83 So.2d 607. As used in that opinion the statement did not undertake to state a correct charge on, or even a definition of, murder in the second degree. The statement was a premise to consideration of one of the questions in that case, which was whether or not a defendant could be convicted of murder in the second degree when another was driving the car with defendant's authorization and defendant was present in the car.

In construing what is now § 314, Title 14, Code 1940, this court per Stone, J., said:

"Our statute (Code of 1876, § 4295), while it has retained as murder every species of homicide which was murder by the common law, has divided that highest offense against persons into two grades: murder in the first degree, and murder in the second degree. Murder in the first degree is further divided, and defined in four classes: * * *

\*   \*   \*   \*   \*   \*

"Fourth. This class brings up the question presented by this record. It embraces all homicides 'perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life.' The act, to come within this class, must be greatly dangerous to the lives of others; must be of such character as to evidence—prove—that the offender had a depraved mind, regardless of human life; and must be without any preconceived purpose to deprive any particular person of life. If there was such preconceived purpose to deprive a particular person of life, the offense would fall under the first or third of the above classes, dependent on the further inquiry, whether the offender killed the person intended or another. It will be observed, however, that this fourth class omits all mention of the words, malice aforethought, formed design, willful, deliberate, malicious, premeditated, unlawfully and maliciously, some of which are found in all the common-law definitions of murder, save that from universal malice. If a blow or injury, intentionally aimed and inflicted on a particular person, the act being greatly dangerous to life, and itself evidencing a depraved mind regardless of human life, be ruled to be murder in the first degree, then this clause fixes a much lower standard of evidential requirement, than do the classes one and three above mentioned. And this is all the more manifest, when we reflect that this clause dispenses with all preconceived purpose to deprive any particular person of life. A blow or injury unlawfully and intentionally aimed and inflicted on a person, by an act greatly dangerous to life, and actually producing death under such circumstances as to evidence a depraved mind regardless of human life, could not be inflicted without a preconceived purpose to deprive some particular person of life. See McManus v. State, 36 Ala. 285. The two propositions are incompatible. We think the legislature, in this clause, intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called 'universal malice.' By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, willful, deliberate,

malicious, and premeditated, which characterize the first class of murder in the first degree.

\* \* \* \* \* \*

"This provision of our statute was taken substantially, and almost literally, from the New York Revised Statutes. In Darry v. People, [10 N. Y. 120] 2 Parker, Cr.R. 606, their statute came before the Court of Appeals of that State. Three of the justices delivered separate opinions in the cause, and construed the clause as we have done. Five of the seven justices concurred. Able opinions were delivered, two of them by Denio and Selden, JJ., conclusively establishing the construction we have above declared. In neither of the classes numbered two, three, four, above, is there a specific intent to take the life of the person slain. The gravity of the offense, in each case, is made up of the wicked act done or attempted, which, without specific intent, caused the death. But the New York statute, as construed in Darry v. People, supra, was, in one very important respect, wholly unlike ours. \* \* \* Our statute is different, first, in making and declaring a larger number of homicides to be murder, and in classifying many of them as murder in the first degree; and, second, in declaring that 'every other homicide, committed under such circumstances as would have constituted murder at common law, is murder in the second degree.' So, every killing, which would be murder at the common law, is murder, either in the first or second degree, under our statute. The enumerated common-law murders fall within the first degree. The non-enumerated fall within the second degree." Mitchell v. State, 60 Ala. 26, 28, 29, 30, 31.

The earliest case which we have found in this jurisdiction in which a conviction for murder in the second degree caused by an automobile was affirmed is Reed v. State, 25 Ala.App. 18, 142 So. 441, 442, certiorari denied 225 Ala. 219, 142 So. 442. The indictment was for murder in the first degree. As to the oral charge of the trial court in that case, the Court of Appeals said:

"The court delivered an able and explicit charge to the jury covering every phase of the law applicable to this case. No exception was reserved to this charge, nor was it subject to objection and exception. \* \* \*"

We have examined the original record in the Reed case and find that in pertinent part the trial court charged as follows:

"Now, gentlemen, the other methods by which murder in the first degree conceivably could be committed in a case of this sort would be, as stated to you, when a person commits an act that is greatly dangerous to the lives of persons present, evidencing a depraved mind and regardless of human life, although the act is done without any pre-conceived purpose to deprive the deceased of life—the defendant would be guilty of murder in the first degree."

While the charge in the Reed case does not comply strictly with the statutory definition in that the charge characterizes the act as having been done without intention to deprive "the deceased" of life, where the statute employs the term "any particular person," both charge and statute declare that the facts hypothesized constitute murder in the first, not in the second, degree. See, also, Johnson v. State, 203 Ala. 30, 33, 81 So. 820, where a written charge given at the request of the state was held to be a correct definition of the fourth class of murder in the first degree

The oral charge in the instant case defines as second degree murder the same offense which § 314 of Title 14 declares to be first degree murder. While a defendant charged with first degree murder may be convicted of second degree murder, the

definitions for both degrees cannot be the same. The second proposition stated in the excepted to portion of the oral charge is also an incorrect statement of the law.

In giving that portion of the oral charge to which exception was reserved, the trial court erred to a reversal.

We have carefully considered defendant's insistence that the trial court erred in refusing to grant a new trial on the ground that the verdict is not sustained by the great preponderance of the evidence and are of opinion that this insistance is not well taken. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The written charges requested by defendant which the trial court refused to give were refused without error.

For the error in the oral charge the judgment is reversed and the cause is remanded.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.