TAYLOR, Judge.
Appellant, Rufus Horton, was indicted by the Tuscaloosa County Grand Jury on the charges of murder and assault in the first degree. He was subsequently convicted of murder and was sentenced to a term of imprisonment of 30 years.
The record indicates that the appellant purchased a bottle of liquor from the Home Package Store in Tuscaloosa sometime between 9:30 and 10:30 on the morning of January 17, 1984. He was next observed by numerous witnesses at approximately 11:30 a.m. traveling south in the northbound lane of Interstate Highway 359 in Tuscaloosa.
Johnny Jones, who was in an Alabama Highway Department truck, attempted to gain the appellant’s attention by flashing his yellow caution light and blowing his horn, but he testified that the appellant “just looked straight ahead like he was in a daze.” Officer Charles McAteer of the Tuscaloosa Police Department, who was traveling north in the northbound lane of the interstate highway in an unmarked police car, flashed his lights in an unsuccessful attempt to attract the appellant’s attention, then placed his car in reverse in an attempt to catch him. Officer Stephen Ray Marchant of the Tuscaloosa Police Department, in response to a radio call by Officer McAteer, proceeded to the scene. Officer Marchant, who was traveling south in the southbound lane of 1-359, first observed the appellant’s vehicle zigzagging and traveling south at approximately 35 miles per hour in the northbound lane. He also observed Officer McAteer trying to back up to stop the appellant. At this same time he observed another car come over the hill traveling north in the northbound lane. He observed the appellant’s vehicle veering completely into the left lane, where it collided head-on with the other vehicle.
The driver of the other car was Sandra D. Patton, and the only passenger was her two-year-old daughter, Christina Patton. As a result of the collision, Sandra Patton received numerous injuries, including a mild concussion, a collapsed lung, a broken arm, a broken leg, facial lacerations, and a crushed kneecap. Christina Patton was killed as a result of the collision. Dr. Henry Santina, who performed an autopsy on Christina, testified that all of the bones in Christina’s head were broken except for one, and he found that the cause of her death was fractures to the skull and injury to the brain.
Officer M.D. Acker of the Tuscaloosa police responded to the scene of the colli *487 sion. When he arrived he observed the appellant and noted that there was a strong odor of alcohol on his breath.
Appellant was transported to the Druid City Regional Medical Center. Upon arrival at the hospital, Frances Ledbetter, the head nurse of the emergency department, at the direction of Dr. Phillip Bobo, the physician assigned to the appellant, took a blood sample from the appellant. Analysis of the sample revealed the blood alcohol content of appellant to be 0.315 percent. Soon thereafter, appellant was started on an intravenous solution. About an hour later, Trooper J.M. Brzezinski made a written request for a blood sample. In response to this request, Dr. Bobo drew another sample and gave it to the trooper. Analysis of this sample revealed a blood alcohol level of 0.26 percent. Dr. Bobo testified that the I.V. which appellant was on for one hour before the second sample was taken would have the effect of increasing the volume of fluid in the appellant’s body and thus reducing his blood alcohol level. The record reveals that both blood samples were taken after the site of the sample was prepared with a Betadine solution which contained no alcohol.
I
The appellant appeals from his murder conviction contending first that the trial court erred in not granting his motion for the production of blood samples for independent analysis before they spoiled.
The appellant cites Rule 18.1(c), Alabama Rules of Criminal Procedure, Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973), and Ware v. State, 472 So.2d 447 (Ala.Cr.App.1985), in support of his contention. We note that the cases cited by the appellant dealt with the production of controlled substances for independent analysis and not the production of a blood sample.
It also appears that the first blood sample taken by the appellant’s physician was never in the custody or control of the State and that the State relied on the findings of the appellant’s own doctor regarding the blood alcohol level of this sample. It seems that the appellant could have gained access to a sample of this blood specimen at any time simply by requesting a sample from his own physician.
Pursuant to our statutory law it is incumbent upon the defendant to procure a qualified person to administer a second and independent chemical test contemporaneous with that requested by the State if he so desires. Section 32-5A-194(a)(3) provides:
“The person tested may at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the discretion of a law enforcement officer.” (Emphasis added.)
Therefore, we can find no error due to the fact that the appellant was not able to procure the blood sample in the custody of the State. The fact that his own physician did conduct an independent analysis further serves to render the appellant’s claim meritless.
As noted above, the two samples of the appellant’s blood were taken by independent third parties soon after his arrival at the hospital. The first revealed a 0.315 percent blood alcohol level and the second, taken an hour later, after an I.V. had been attached to the appellant, revealed a 0.26 percent blood alcohol level. Both samples revealed blood alcohol levels far beyond the 0.10 percent level at which it is illegal to drive a vehicle. § 32-5A-191(a)(l), Code 1975. In any event the appellant was not entitled to the blood sample in the possession of the State, and the fact that the trial court did not grant the motion for production until after the sample spoiled does not change this.
Furthermore, had we found that the appellant was entitled to the blood sample in the possession of the State, we do not *488 believe that any error could be assigned to the trial court for not ruling on the production motion until after the sample spoiled. The appellant’s motion to produce did not inform the trial court of the apparent frailty of a blood sample and the necessity of making a ruling before it spoiled. The trial court cannot be held in error for failing to make a prompt ruling where the necessity for doing so was never brought to its attention.
II
The appellant next contends that the trial court’s charge created a mandatory presumption on the issue of recklessness and relieved the State of the burden of proving every element of the offense beyond a reasonable doubt. He specifically argues that, by pyramiding various presumptions, the charge effectively told the jury that if the defendant had a blood alcohol level in excess of 0.10 percent, he was guilty of murder.
The applicable portions of the charge were:
“At this time I’m going to read to you the elements of the offense of murder and the lesser included offenses. A person commits the crime of murder if under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.
[[Image here]]
“Okay, I have used some terms here that at this time I probably need to define for you, and that’s what I will do at this time.
“Okay, I used the term ‘recklessly’. The Law of Alabama provides that the definition of recklessly is as follows: A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication acts recklessly with respect thereto.
[[Image here]]
“The defendant in this case is charged with an offense which is alleged to have been committed by the person while he was under the influence of alcohol. There has been some evidence of varying degrees of consumption of alcohol by the defendant. To help you in determining whether or not the defendant was intoxicated, the Law of Alabama has the following presumptions regarding intoxication. First of all, if there were at the time .05 percent or less of weight of alcohol in a person’s blood, it shall be presumed that the person was not under the influence of alcohol. If there were at the time in excess of .05 percent but less than .10 percent by weight of alcohol in the person’s blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol. If there were at the time .10 percent or more by weight of alcohol in the person’s blood, it shall be presumed that the person was under the influence of alcohol.”
As the primary element of the pyramiding theory, the appellant states in his brief that “The Court never advised the jury that under the influence was not the same as intoxicated, and in fact created the situation where the jury could, by applying one presumption on top of another, find the defendant guilty of murder based on the .10% blood alcohol.” The Commentary to § 32-5A-191, Code 1975, states that “in subsection (a)(2), the phrase ‘under the influence of alcohol’ replaces the previously used ‘is intoxicated.’ ” This clearly indicates an interchangeability of terms. The trial court could hardly distinguish between the two terms. It did not err in not drawing such a distinction. Because this ele *489 ment of the appellant’s “pyramid” theory fails, it is inevitable and unavoidable that the entire argument should collapse.
We have reviewed the trial court’s entire charge and find that it correctly informed the jury of the elements of murder and in no way relieved the State of its burden of proving every element beyond a reasonable doubt.
The judgment of the trial court is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.