639 So.2d 1335 (1993)
Ex parte Teddy Lynn HARWELL.
(Re Teddy Lynn Harwell v. State).
1920892.
Supreme Court of Alabama.
September 17, 1993.
Rehearing Denied December 10, 1993.
Wilford J. Lane, Anniston, for petitioner.
James H. Evans, Atty. Gen., and Andy S. Poole, Deputy Atty. Gen., for respondent.
HORNSBY, Chief Justice.
We have granted Teddy Lynn Harwell's petition for certiorari review of a judgment of the Court of Criminal Appeals affirming his convictions of reckless homicide and assault in the first degree. We reverse and remand.
On August 3, 1991, Harwell and his wife went to the Surfside Six Lounge in Talladega County at approximately 3:00 p.m. Harwell admitted that he consumed seven or eight beers while he was there. At approximately 10:10 that evening, Harwell left the Surfside Six to drive his wife and two of their friends back to Bynum, where they lived. They proceeded north on County Road 63; on that road, Harwell's automobile collided with a motorcycle driven by Kenneth Goodwin. Kenneth Goodwin suffered serious bodily injuries, and his wife, Judy Goodwin, who was riding as a passenger on the motorcycle, died as a result of injuries sustained in the collision.
Several hours after the accident, Harwell was transported to Citizens Hospital in Talladega, where he consented to have a blood sample drawn. The blood sample was transmitted to the Alabama Department of Forensic Sciences in the Birmingham Regional *1336 Laboratory, where a forensic scientist performed tests on it; the results of those tests indicated that Harwell had a blood alcohol content of 0.19%.
Harwell was subsequently indicted for reckless murder and assault in the first degree. The indictment for reckless murder reads as follows:
"The Grand Jury of [Talladega County] charge that before the finding of this Indictment and on or about the 3rd day of August, 1991, in the County of Talladega, Alabama, Teddy Lynn Harwell ... did recklessly engage in conduct which manifested extreme indifference to human life and created grave risk of death to a person other than the said Teddy Lynn Harwell, and did thereby cause the death of Judy B. Goodwin, by driving a motor vehicle into[,] on, or against the motor vehicle in which the said Judy B. Goodwin was a passenger, while the said Teddy Lynn Harwell was driving a motor vehicle under the influence of alcohol, in violation of § 13A-6-2 of the Code of Alabama, 1975...."
The indictment charging Harwell with assault in the first degree made similar allegations with respect to the injuries caused to Kenneth J. Goodwin and specifically referenced the language of Ala.Code 1975, § 13A-6-20(a)(5), regarding causing injury while driving an automobile under the influence of alcohol.
On October 10, 1991, approximately two weeks after the State served an indictment on Harwell, he sought production of a sample of his blood that had been drawn after the accident for an independent blood alcohol analysis. As of November 15, 1991, the prosecution had failed to comply, and on that day Harwell filed a second motion to obtain a sample of his blood and to obtain the State's records relating to the analysis of his blood. On the same day, the trial judge denied that part of the motion relating to the production of the blood sample. Harwell argues that the trial court erred in denying this request.
The Court of Criminal Appeals affirmed both convictions by unpublished memorandum, holding that his "argument that the trial court's denial of his request for a sample of his own blood for independent testing constituted a denial of his rights to due process is without merit." Harwell v. State, 618 So.2d 147 (Ala.Crim.App.1993). On May 18, 1993, this Court granted Harwell's petition for certiorari review.
Discovery matters are within the sound discretion of the trial court, and this Court will not reverse a trial court's rulings on discovery issues unless there has been a clear abuse of discretion. Home Ins. Co. v. Rice, 585 So.2d 859 (Ala.1991). Further, this Court has held that, to be entitled to a reversal of a judgment for an abuse of discretion, the party claiming abuse must establish that it was prejudiced by the alleged abuse. See Valley Properties, Inc. v. Strahan, 565 So.2d 571, 583 (Ala.1990).
Harwell argues that the trial court abused its discretion by denying his motions to obtain a sample of his blood so that he could have it independently analyzed. He also argues that the trial court's denial of his request prejudiced his rights to due process. He notes that this Court has held that a defendant has a right to obtain independent testing of controlled substances that were obtained from the defendant and that are in the custody and control of the State. Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973). See also Sawyer v. State, 598 So.2d 1035 (Ala.Crim.App.), cert. denied, ___ U.S. ___, 113 S.Ct. 386, 121 L.Ed.2d 295 (1992); Gayle v. State, 591 So.2d 153 (Ala.Crim.App. 1991); Jackson v. State, 560 So.2d 1100 (Ala. Crim.App.1989); Moton v. State, 524 So.2d 381 (Ala.Crim.App.1988); Ware v. State, 472 So.2d 447 (Ala.Crim.App.1985); Blair v. State, 453 So.2d 1092 (Ala.Crim.App.1984).
In Warren, holding that due process requires that a defendant be allowed to obtain a sample of the controlled substances obtained from him, this Court stated:
"Impartiality and fairness require that the defendant be aided by all available processes of the court, when invoked, to enable him to test and question the authenticity of the State's evidence against him. So where the contents of an allegedly prohibited substance [are] in issue and [are] to be offered against him, is it asking too much for the defendant, that he be allowed *1337 as much opportunity to determine the nature of the substance and its characteristics as has been afforded the State? We think not, and it is no answer to the question that the State's expert witness is a skillful scientist and a creditable witness. To enable one to present his defense fully and effectively, the right of cross-examination, thorough and sifting, must remain inviolate, and to enable the defendant to invoke this right, on motion, he should be furnished a sample of the allegedly prohibited substance that will be offered against him in the trial so that he can have its qualities researched by scientists of his choosing. We think that to deny him this right is to deny him due process, especially where his motion to produce was made well in advance of the trial so that it could have been ruled on by the court without causing any undue delay in the trial."
292 Ala. at 75, 288 So.2d at 830. (Emphasis added.) Harwell argues that where, as here, his blood alcohol content is a critical element in the prosecution's case against him, he has a right, similar to that of the defendant in Warren, to production of a sample of his blood for independent testing by a scientist of his choice.
The State argues that the blood alcohol content of his blood sample is not a material element of the crime of reckless murder. However, it is well established that one's blood alcohol content is a material element of the prosecution's case for reckless murder based on a fatal motor vehicle wreck involving a drunk driver. See Nixon v. State, 268 Ala. 101, 105 So.2d 349 (1958) (noting that a defendant's intoxication at the time of a fatal car wreck has been considered a significant, if not controlling, factor in a prosecution for reckless murder); Hyde v. State, 230 Ala. 243, 160 So. 237 (1935). Cf. Gwin v. State, 425 So.2d 500 (Ala.Crim.App. 1982) (holding that the trial court did not err in refusing to require the State to produce the weapons and bullets for independent expert examination because that evidence was not critical to the defendant's defense of self-defense), writ quashed, Ex parte Gwin, 425 So.2d 510 (Ala.1983). Blood alcohol content is also material to Harwell's assault conviction based on Ala.Code 1975, § 13A-6-20(a)(5).
The record reveals that when Harwell requested production of a blood sample the sample was in the custody and control of the State and was available for further testing. The technician who conducted the State's analysis of the blood sample testified at trial that a sufficient amount of the blood sample was left to conduct an accurate blood alcohol test and that it had not yet spoiled. It follows that the State's refusal to provide Harwell with the sample deprived him of any means of challenging the results of the State's test through his own independent test. We believe the defendant's analogy to testing controlled substances is well taken under these facts. Where a defendant makes a timely request, where the blood alcohol content of that sample is a material element of the charge, and where the defendant would be prejudiced by the denial of his motion for production of the blood sample for independent testing, due process requires that the State produce a sample of his blood for independent testing of its blood alcohol content.
Rule 16.1(c), A.R.Crim.P., supports for Harwell's argument:
"(c) Documents and Tangible Objects. Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown, permit the defendant to analyze, inspect, and copy or photograph books, papers, documents, photographs, tangible objects, controlled substances, buildings or places, or portions of any of these things, which are within the possession, custody, or control of the state/municipality and:
". . . .
"(2) Which are intended for use by the state/municipality as evidence at the trial; or
"(3) Which were obtained from or belong to the defendant."
Although blood samples are not specifically listed in Rule 16.1, while controlled substances *1338 are, both (particularly blood) are necessarily "obtained from ... the defendant." Furthermore, Rule 16.1(f), A.R.Crim.P., provides for an expansive reading of Rule 16.1:
"Nothing in this Rule 16.1 shall be construed to limit the discovery of exculpatory material or other material to which a defendant is entitled under constitutional provisions or other provisions of law."
(Emphasis added.) Other provisions of Alabama law directly entitle one accused of driving under the influence of alcohol to an independent test of his blood. Ala.Code 1975, § 32-5A-194(a)(3), states:
"(3) The person tested may at his own expense have a physician, or a qualified technician, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the discretion of a law enforcement officer. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer."
See Lockard v. Town of Killen, 565 So.2d 679 (Ala.Crim.App.1990); Horton v. State, 500 So.2d 485 (Ala.Crim.App.1986); Gibson v. City of Troy, 481 So.2d 463 (Ala.Crim.App. 1985).
In Gibson v. City of Troy, the court noted that "[t]he purpose of allowing an accused to obtain an additional test is to provide him a means of `cross checking' the state's test." 481 So.2d at 467. Harwell was not allowed to "cross check" the state's test and was, thus, denied due process. Accordingly, the judgment of the Court of Criminal Appeals is due to be reversed as to both convictions and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX and INGRAM, JJ., dissent.
INGRAM, Justice (dissenting).
I respectfully dissent. This Court, in Ex parte Bell, 475 So.2d 609, 611 (Ala.1985), held that there was no general constitutional right to discovery in a criminal trial. Discovery is within the sound discretion of the trial court. See Charles Gamble, McElroy's Alabama Evidence § 290.05(1) (4th ed. 1991). I agree with the majority's holding that samples of blood and urine are discoverable under Rule 16, Ala.R.Cr.P.; however, I dissent because I believe that Harwell did not preserve this issue for review.
Harwell filed a motion seeking discovery of his own blood for independent testing. The trial court held a hearing on the discovery matters before seating the jury. At that hearing the trial court stated:
"Now, as an officer of the court, the district attorney has just told me that he has given the defendant everything that's discoverable to the knowledge that he has. And should we proceed in the trial and he offers anything that was discoverable that hasn't been given to you, I will sustain your objection. With that, we'll proceed."
At trial, the State offered the results of the blood and urine tests, without objection.
Judge Bowen, writing for the Court of Criminal Appeals in the recent case Pettway v. State, 607 So.2d 325, 331 (Ala.Cr.App. 1992), held:
"Rule 16 does not exist in a vacuum; it is subject to the general principle that objections must be made in a timely fashion....
"A trial court should be informed of a party's failure to comply with discovery procedures as soon as the aggrieved party is aware of the non-compliance. At a minimum, the aggrieved party must object to the undisclosed evidence at the time that evidence is offered and must state the specific grounds for the objection, i.e., that the offending party failed to comply with the discovery order or some other aspect of Rule 16."
(Some emphasis original; other emphasis added.)
The record clearly shows that Harwell did not object to the admission of the results of the blood and urine tests; therefore, I believe, Harwell failed to preserve this issue for review. Because the issue was not preserved for review, I believe the judgment of the *1339 Court of Criminal Appeals, affirming Harwell's conviction, should be affirmed; therefore, I dissent.