NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-951


STATE OF LOUISIANA

VERSUS

FRIN WAYNE COWARD


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13147-17
HONORABLE GUY BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.


CONVICTION AFFIRMED. REMANDED FOR SENTENCING.

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Frin Wayne Coward**

**John Foster DeRosier**
**District Attorney**
**Fourteenth Judicial District**
**Post Office Box 3206**
**Lake Charles, Louisiana  70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Elizabeth B. Hollins**
**Jacob Johnson**
**Assistant District Attorneys**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**CONERY, Judge.**

The State charged Defendant, Frin Wayne Coward, with second degree murder following the shooting death of Michael Fountain. A jury convicted Defendant as charged. On appeal, Defendant challenges his conviction, questioning the sufficiency of the State's evidence as well as rulings related to a special jury instruction and the denial of a motion for new trial. Defendant also assigns sentencing error. For the following reasons, we affirm Defendant's conviction and remand for sentencing. The latter order arises following recognition on error patent review that the trial court failed to impose sentence.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of March 8, 2017, the Calcasieu Parish Sheriff's Department responded to a 911 call regarding a shooting at a Vinton, Louisiana residence. The caller reported that a man was on the ground. Additional shots were heard on the call.

Corporal Donald Lindenman explained that he was the first officer to arrive at the scene. He saw two people standing on a paved portion of the driveway and a man lying on his back closer to a trailer home. For safety purposes, Corporal Lindenman handcuffed the two individuals, identified in the record as Jason Coward[1] and Jim Coward. Jason, Defendant's nephew, explained that he lived in a neighboring home and was the individual who initiated the 911 call. Although both officers and ambulance personnel attempted to revive the victim, Mr. Fountain, he was pronounced dead at the scene.

---

[1] While we refer to other witnesses by reference to both their surname and respective honorific, we refer to Jason Coward by his given name to avoid confusion with Defendant who shares the same surname.

Corporal Lindenman explained that Defendant exited the trailer home "at some point" and that "not knowing that there was even anyone there kind of startled me." The officer detained Defendant, "read his Miranda rights[,]" and placed him in the rear of his police unit.

During the investigation at the scene, Tyler Breaux and James Planchard, employees of a nearby business, spoke with Corporal Lindenman and reported that they heard four gunshots. They also reported seeing a woman running from the "south and getting into a white vehicle." The record establishes that the woman seen running from the area was Sandra Fruge, Mr. Fountain's girlfriend.

Ms. Fruge testified at trial that she arrived at Defendant's residence in the early morning hours of March 8th to stay with Mr. Fountain, who was residing with Defendant. She explained that she and Mr. Fountain slept until "10:00, 10:30" a.m. During the course of the day, however, Defendant and Mr. Fountain began arguing, with Defendant focusing on Mr. Fountain's difficulties in addressing his mother's recent death. Ms. Fruge explained that Defendant threatened Mr. Fountain during the argument, that he had a holstered gun on his hip, and that he would pat his hip during the argument. Ms. Fruge testified that although both men were violent, she did not see Mr. Fountain become violent that day.

According to Mr. Fountain's sister, Denise Dickerson Authement (Ms. Dickerson),[2] Mr. Fountain telephoned her repeatedly during the course of the day and reported increasingly threatening behavior by Defendant. During one call, Mr.

---

[2] We refer to the witness as Ms. Dickerson to maintain consistency with Defendant's use thereof in his appellate brief.

Fountain reported that Defendant "was pulling a gun out." In his final call before the shooting, he asked her to "[c]ome get [him]."

Ms. Fruge explained that as the argument escalated, she began packing Mr. Fountain's belongings in order to leave when she heard gunshots and ran to the front porch. When asked what she saw once on the porch, Ms. Fruge explained:

> Mr. Coward was standing there and he was kind of looking and I was like, "What are you doing? What's going on?" He put his gun up, he did like this and he pointed again, and at that time I seen Mr. Fountain come across. He was holding his neck and the back of his leg.[3]

She confirmed that she then saw Mr. Fountain fall. Ms. Fruge explained that she pushed Defendant "out of the way," jumped from the porch, and ran to Mr. Fountain, who told her "to run." Ms. Fruge stated that she then ran from the scene toward the roadway and explained that as she "got up to run I heard more gunshots." Ms. Fruge was able to stop a passing vehicle and rode to a nearby store where she called authorities.

Corporal Lindenman explained in his trial testimony that he ultimately transported Defendant to the hospital for collection of blood and urine. During that drive, Defendant stated to him that he and Mr. Fountain had argued, but that Ms. Fruge and Mr. Fountain had left the residence when he heard gunshots and, after going outside, he saw Mr. Fountain lying on the driveway. Defendant explained to Corporal Lindenman that he attempted to stop the bleeding from the "carotid artery" by applying pressure. However, the officer testified that Defendant had no blood on his hands or clothing.

While Defendant did not initially admit that he was the shooter, he admitted as such in a later interview, which was received into evidence and reviewed by the

---

[3] Dr. Terry Welke, Calcasieu Parish Coroner, identified Mr. Fountain's cause of death as multiple gunshot wounds to the neck, trunk, and the right leg. The wound to the neck injured the carotid artery, whereas the shot to the abdomen injured Mr. Fountain's liver.

jury. During that interrogation, Defendant stated that during the argument, Mr. Fountain reached into a boat located outside the home, retrieving a paddle. Defendant explained that he was already armed with a gun at that time and that he shot three times.

A grand jury ultimately indicted Defendant with second degree murder, a violation of La.R.S. 14:30.1, on July 6, 2017. The indictment was amended on February 16, 2018, to add the language "with a firearm."

Following a multi-day trial, a unanimous jury convicted Defendant as charged on February 24, 2018. The trial court subsequently denied Defendant's Motion for New Trial wherein he challenged, in part, his objection to the testimony of Ms. Dickerson on the basis of hearsay.

Following a sentencing hearing, Defendant appealed. He assigns the following as error:

[1.] The State failed to sufficiently prove that [Defendant] was guilty of Second Degree Murder.

[2.] The trial court erred by failing to determine whether a life sentence was constitutional in this case. The court never considered whether a less than life sentence was required by the Constitution.

[3.] Alternatively, trial counsel was ineffective for not filing a motion to reconsider.

[4.] The trial court erred by denying [Defendant] a special jury instruction, submitted in writing, seeking to inform the jury of its right to find him guilty of a lesser included offense, even if the State proved its case for second degree murder.

[5.] [The] [t]rial court erred in denying [Defendant]'s motion for a new trial based on erroneous and prejudicial evidentiary rulings of the trial court[:] Specifically, the repeated hearsay statements by the victim's sister which she attributed to Mr. Fountain and his desire to leave the residence the day of the shooting.

4

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review reveals a single error regarding sentencing, namely, the sentencing transcript indicates that the trial court failed to impose sentence.

At the sentencing hearing, and after hearing argument regarding defense counsel's assertion that the mandatory life sentence was unconstitutionally excessive as applied to Defendant, the trial court stated:

> [I]t should be noted that neither Defense or State has presented anything post-trial to the Court as it relates to any mitigating - - as Defense Counsel points out that the statute takes away the Court's discretion as it relates to this charge. And the Court - - I do want to note that Mr. Coward had no prior convictions in this matter to the extent to which that mitigates. And under Louisiana revised statute 1430.1 [sic], the punishment for second degree murder is life imprisonment and [sic] hard labor without the benefit of parole, probation, or suspension of sentence. Again, a jury of Mr. Coward's peers has made that determination.

The trial court then advised Defendant of the prescriptive period for filing post-conviction relief, and defense counsel renewed his previous objection to the excessiveness of the sentence as applied to Defendant. The transcript reveals no further statement regarding the sentence was made by the trial court.

As the transcript shows, the trial court referenced the applicable sentence but did not ultimately impose that sentence.[4] Accordingly, we remand this matter to the trial court for the imposition of sentence. This determination pretermits discussion of Defendant's second and third assignments of error which address

---

[4] We are mindful that both the minutes of the sentencing hearing and the Uniform Commitment Order indicate that the trial court imposed sentence. In the event that the minutes and the transcript conflict, however, the transcript must prevail. *State v. Tidwell*, 14-123 (La.App. 3 Cir. 6/4/14), 140 So.3d 894 (citing *State v. Dorsey*, 10-1021 (La.App. 3 Cir. 3/9/11), 58 So.3d 637, *writ denied*, 13-2561 (La. 6/13/14), 140 So.3d 1184).

sentencing issues. On remand, the trial court is reminded of the sentencing guidelines of La.Code Crim.P. art. 894.1 if a downward departure from the mandatory life sentence is again argued by Defendant. *See State v. Dorthey*, 623 So.2d 1276 (La.1993).

### *Sufficiency of the Evidence*

Defendant first contends that the State failed to sufficiently prove he was guilty of second degree murder, arguing that this was not an "intentional, unprovoked shooting." He alleges instead that, based on the evidence presented, no rational jury could have found the State successfully negated his contention that he reasonably acted in self-defense.

In support of his argument, Defendant points to testimony and evidence suggesting that he did not shoot from the porch as suggested by Ms. Fruge, but that he and Mr. Fountain were in close proximity. He contends that the closeness of the two men supported his assertion that he was reasonable in his fear of great bodily harm from Mr. Fountain who, he claimed, was acting aggressively toward him. In support of that argument, Defendant points to the testimony of his nephew, Jason, who testified at trial that he saw Mr. Fountain move toward the boat near the front porch at the time of the shooting. Defendant contends this testimony is corroborated by blood evidence indicating that Mr. Fountain was near the rear of the boat either at the time he was shot or at some time after being initially shot. Defendant also argues that he had a "reasonable perception that Mr. Fountain would arm himself with the boat paddle located in the open-top boat, and which was easily reachable by Mr. Fountain." He notes that Mr. Fountain, who he maintains was acting aggressively, was younger and larger. These circumstances,

6

Defendant contends, demonstrate that the State failed to disprove that he reasonably believed he was in danger, requiring a reversal of his conviction.

In *State v. Reed*, 14-1980, pp. 20-21 (La. 9/7/16), 200 So.3d 291, 309, *rehearing granted in part on other grounds*, 14-1980 (La. 10/19/16), 213 So.3d 384, *cert. denied*, __ U.S. __, 137 S.Ct. 787 (2017), the supreme court explained:

> In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *State v. Captville*, 448 So.2d 676, 678 (La. 1984). Applying the *Jackson* standard, the appellate court must determine the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Captville*, 448 So.2d at 678.

When, as here, a defendant challenges the sufficiency of the evidence in a case in which he asserts he acted in self-defense, "the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense." *State ex rel. D.P.B.*, 02-1742, p. 5 (La. 5/20/03), 846 So.2d 753, 757.

In order to convict Defendant of second degree murder, the State was required to prove Defendant killed Mr. Fountain, and Defendant had the specific intent to kill or inflict great bodily harm. *See* La.R.S. 14:30.1.

> Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. Rev. Stat. 14:10(1); *State v. Butler*, 322 So.2d 189, 192-93 (La. 1975). Specific intent to kill may also be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Williams*, 383 So.2d 369, 373 (La. 1980); *State v. Procell*, 365 So.2d 484, 492 (La. 1978).

*Reed*, 200 So.3d at 309.

A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20(A)(1).

> "In examining a self-defense claim, it is necessary to consider: (1) whether the defendant reasonably believed that he was in imminent danger of death or great bodily harm; (2) whether the killing was necessary to prevent that death or great bodily harm; and (3) whether the defendant was the aggressor in the conflict." *State v. Mayes*, 14-683, pp. 2-3 (La.App. 3 Cir. 12/23/14), 154 So.3d 1257, 1259, *writs denied*, 15-178, 15-220 (La. 11/16/15), 184 So.3d 24. Additionally, in determining whether the defendant had a reasonable belief that the killing was necessary, it is appropriate to consider "the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character." *State v. Thomas*, 43,100, p. 5 (La.App. 2 Cir. 4/30/08), 981 So.2d 850, 854, *writ denied*, 08-1276 (La. 2/6/09), 999 So.2d 769.

*State v. Fox*, 15-692, p. 4 (La.App. 3 Cir. 2/3/16), 184 So.3d 886, 890, *writ denied*, 16-404 (La. 3/13/17), 216 So.3d 800.

The State clearly presented sufficient evidence to support its claim of second degree murder as it is unquestioned that Defendant shot Mr. Fountain three times, supporting a determination that Defendant had the specific intent to kill. Additionally, the jury was made aware of wide ranging testimony regarding Defendant's threats to Mr. Fountain in the time period leading up to the shooting.

More specific to Defendant's assignment, the record further supports the jury's determination that the State proved that Defendant did not act in self-defense. Ms. Fruge offered extensive testimony regarding an argument on the day of the shooting, during which Defendant referenced shooting Mr. Fountain and his repeated patting of a holstered gun on his hip. Ms. Fruge also testified that she and Mr. Fountain were packing their belongings with the intention of leaving the residence due to the argument. She explained that, upon hearing shots fired, she

8

pushed Defendant "out of the way," "jumped off of the porch," and ran to Mr. Fountain, who had sustained gunshot wounds at that time. She stated that Mr. Fountain had a cell phone in his hand.

Additionally, Ms. Dickerson's testimony further confirmed the hostile environment in the trailer that day as she explained that Mr. Fountain told her Defendant had threatened him with a knife and had pulled out a gun. Ms. Dickerson also relayed Mr. Fountain's statements to her of his desire to leave the residence that afternoon, with his last request occurring between 4:00 and 4:08 p.m. The first 911 call was placed at 16:11:39 (4:11:39 p.m.).

While Jason testified that he heard a voice indicating that Mr. Fountain threatened to beat Defendant, the jury, acting within its factfinding role, could have permissibly either rejected that testimony or placed minimal value on any such statement given the context of the ongoing argument. Similarly, the jury could have discounted Jason's testimony that he did not see shots fired from the raised porch. In addition to the fact that the jury heard Defendant's statement to officers that he fired his gun from the porch, investigators found eight or nine spent shell casings at the scene, six of which were on the raised porch. Given those circumstances, the jury could reasonably have concluded that Defendant fired some shots from the raised porch that day. Based on the evidence at the scene, the shots fired were not within a sufficiently close proximity so as to have caused reasonable fear of aggression by Mr. Fountain. The record instead establishes that the raised porch where the shell casings were located was approximately thirty-five feet from the rear of the boat, a location where Mr. Fountain's blood was identified.

Further, photographs and testimony depicted a small pocket knife on a key ring attached to Mr. Fountain's belt loop, demonstrating that he did not remove the key ring from his pants. While Defendant made certain statements regarding Mr. Fountain's having threatened him with a boat paddle, no witness reported that Mr. Fountain armed himself as such. In fact, police determined there was no blood on the paddle despite the presence of blood on the boat motor and the area near the boat motor. Again, Ms. Fruge explained that the only object she saw in Mr. Fountain's hand was a cell phone. She further denied having seen Mr. Fountain run toward Defendant or "toss a paddle or anything to that effect[.]" And, finally, while Defendant contends that a difference in the men's ages and physicality support the reasonableness of his fears, the record does not support that determination. Rather, at the time of his arrest, Defendant identified himself as seventy-years of age. Jason explained that Defendant was approximately "six one." The autopsy report indicates that Mr. Fountain was fifty-six years of age and seventy-two inches in height. Further, Ms. Fruge testified that Mr. Fountain was disabled, had undergone neck and back surgery, and walked with a limp.

Construing the totality of the evidence in favor of the State as the standard of review dictates, it is clear that the jury acted reasonably in rejecting Defendant's claim of self-defense. To the extent Defendant alleged that he held a subjective belief that he was in imminent danger of losing his life or receiving great bodily harm, the jury may have rejected that claim given the evidence negating the reasonableness of such a claim. Additionally, the facts of the case demonstrate that Defendant's actions exceeded the level of force reasonably and apparently necessary to defend himself in the situation. Accordingly, we find no merit in

10

Defendant's assignment as the record indicates that the State presented sufficient evidence to disprove Defendant's claim of self-defense.

For these reasons, we affirm Defendant's conviction of second degree murder.

### *Special Jury Instruction*

In his next assignment of error, Defendant contends the trial court erred in denying his request for a special jury instruction seeking to inform the jury of its right to find him guilty of a lesser included offense even if the State proved its case for second degree murder. The requested jury instruction, filed by defense counsel in open court, provided: "'You may legally return any responsive verdict listed on the verdict form even if you believe that the State has proved beyond a reasonable doubt every element of the offense charged.'" He contends that by this instruction, he "sought to ensure the jury was informed of its right to return a verdict of guilty for a lesser included offense even if it found the State had proved beyond a reasonable doubt that [he] was guilty as charged of second degree murder." He refers this court to *State v. Porter*, 93-1106 (La. 7/5/94), 639 So.2d 1337, for the proposition that the jury had a right to return a compromise verdict as requested in his preferred jury instructions.

While no pre-trial ruling on the requested jury instruction is contained within the record, and Defendant provides no citation to the record in that regard, it is clear that the trial court rejected Defendant's request. Rather, the transcript indicates that, when the trial court published its jury instructions to counsel, defense counsel remarked that the instructions did not include its proposed responsive verdict language. The trial court noted defense counsel's objection in that regard and denied Defendant's request, doing so without further comment.

11

Louisiana Code of Criminal Procedure Article 807 provides that both the State and the defendant may submit "special written charges for the jury" as in this case. The "requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." *Id.*

In *State v. Thibodeaux*, 16-542 (La.App. 3 Cir. 3/15/17), 216 So.3d 73, *writ denied*, 17-642 (La. 12/5/17), 231 So.3d 628, a panel of this court addressed the trial court's refusal to provide a substantively similar instruction[5] in a second degree murder proceeding. Finding no error in the trial court's refusal to adopt that special instruction, the panel quoted second circuit jurisprudence, providing:

> Clearly, the first portion of the special instruction requested by [the defendant] was an attempt to reiterate more specifically the law of responsive verdicts to the jury, i.e., even if the evidence supports second degree murder, you can return a manslaughter verdict. Although arguably a technically correct statement, it is one which is integrated within the responsive verdict law. The jury was clearly instructed that it could return a verdict of guilty to the lesser included offense of manslaughter. To expound the responsive verdict law in the way that [the defendant] suggests would, in our opinion, require, at the very least, qualification and certainly explanation. There is no Louisiana jurisprudence supporting an argument that it is proper to instruct a jury that it can disobey law and reach a verdict inconsistent with the evidence. In this case, the general instruction was adequate to instruct the jury on this point. The trial judge obviously agreed. Finally, with the general instructions clearly listing manslaughter as a lesser included verdict to second degree murder, [the defendant's] request to inform the jury that in any second degree murder case you may return a verdict of manslaughter would have been redundant.

*Id.* at 86 (quoting *State v. Sharp*, 35,714, pp. 19-20 (La.App. 2 Cir. 2/27/02), 810 So.2d 1179, 1199, *writ denied*, 02-1736 (La. 6/6/03), 845 So.2d 1081). We maintain that reasoning here.

---

[5] Defense counsel in *Thibodeaux*, 216 So.3d at 84 sought a special instruction as follows: "'You may return any responsive verdict listed on the verdict form even though you find that the State has proved beyond a reasonable doubt every element of the offense charged.'"

In instructing the jury in this case, the trial court explained the elements of second degree murder and instructed that: "If you are not convinced that the defendant is guilty of the offense charged, you may find the defendant guilty of a lesser offense. The following offenses are responsive lesser offenses to the crime of second degree murder: 1) manslaughter 2) negligent homicide." The trial court then proceeded to instruct the jury as to the elements of each before ultimately informing the jury that:

> Thus, if you are convinced beyond a reasonable doubt that the defendant is guilty of second degree murder, your verdict should be guilty of second degree murder. If you are not convinced that the defendant is guilty of second degree murder but you are convinced beyond a reasonable doubt that the defendant is guilty of manslaughter, your verdict should be guilty of manslaughter. If you are not convinced that the defendant is guilty of manslaughter, but you are convinced beyond a reasonable doubt that the defendant is guilty of negligent homicide, the form of your verdict should be guilty of negligent homicide.
>
> If the State has failed to prove beyond a reasonable doubt that the defendant is guilty of second degree murder or any of the lesser included offenses, your verdict should be not guilty.

Finding that this instruction appropriately informed the jury of its ability to return a responsive verdict, we leave the trial court's denial of Defendant's request for a special instruction undisturbed. As the second circuit explained in *Sharp*, 810 So.2d at 1192, Defendant's request would "require, at the very least, qualification and certainly explanation." Thus, the trial court rightfully rejected that request pursuant to La.Code Crim.P. art. 807.

### *Motion for New Trial*

In his final assignment of error, Defendant contends the trial court erred in denying his motion for new trial by which he alleged that the trial court erred in

13

allowing hearsay statements by Ms. Dickerson that Mr. Fountain informed her of his desire to leave the residence the day of the shooting.

Setting forth the grounds for new trial, La.Code Crim.P. art. 851 provides:

A. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:

. . . .

(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

A trial court's ruling on a motion for new trial is within the sound discretion of the trial court and will not be disturbed "absent a clear showing of abuse of that discretion." *State v. Gautreaux*, 14-594, p. 17 (La.App. 3 Cir. 11/5/14), 153 So.3d 1232, 1243 (quoting *State v. Bibbins*, 13-875, p. 20 (La.App. 5 Cir. 4/9/14), 140 So.3d 153, 167), *writ denied*, 14-2521 (La. 9/18/15), 178 So.3d 144. "The merits of a motion for new trial must be viewed with extreme caution in the interest of preserving the finality of judgments." *Id.*

During trial, defense counsel objected to Detective Abshire's testimony about what Ms. Dickerson told him Mr. Fountain said to her on their phone calls on the day of the shooting. Defense counsel further objected when Ms. Dickerson testified about the content of those phone calls. Defendant maintains those challenges in his brief to this court, contending that the trial court "erroneously allowed these statements from both Detective Abshire and Ms. [Dickerson] to be heard by the jury." He asserts that the testimony at issue was prejudicial, as it offered the jury a theory that Defendant was the aggressor, which undermined his

self-defense argument. He thus argues that the admission of the testimony violated his right to a fair trial as well as his right to confront his accusers.

However, we note that Defendant limited the basis of his Motion for New Trial to the testimony given by Ms. Dickerson and did not include that offered by Detective Abshire. Albeit on the same topic, we do not now expand that motion to include review of testimony given by Detective Abshire regarding Ms. Dickerson's conversations with Mr. Fountain. *See* Uniform Rules—Courts of Appeal, Rule 1-3. We accordingly address Defendant's assignment within the context of that preserved within the motion for new trial.

The parties do not dispute that Mr. Fountain was unavailable for trial for purposes of La.Code Evid. art. 804. Additionally, the State urged that his availability was immaterial as La.Code Evid. art. 803 provides relevant hearsay exceptions as follows:

> **(1) Present sense impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
>
> . . . .
>
> **(3) Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.

Notwithstanding the trial court's overruling of Defendant's objection to the qualification of the statement under the above provisions, we point out that "[i]nadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. *State v. Sterling*, 377 So.2d 58

(La.1979); *State v. McIntyre*, 381 So.2d 408 (La.1980)." *State v. Spell*, 399 So.2d 551, 556 (La.1981).

As indicated above, Ms. Dickerson explained to the jury that she and Mr. Fountain spoke repeatedly by telephone and that he reported to her that he wanted to leave Defendant's residence. He further informed her that Defendant was drinking, was ranting, had pulled both a knife and a gun, and had told him to quit crying over his mother's death.

The jury heard similarly from other witnesses. Significantly, Detective Abshire relayed Ms. Dickerson's statement that Mr. Fountain informed her that Defendant had been drinking, complaining about Mr. Fountain's reaction to his mother's death, and that he was "trying to pick a fight." Jason also explained that he heard an argument taking place inside Defendant's residence.

Additionally, Ms. Fruge testified extensively regarding the events related by Ms. Dickerson, as she explained that Defendant threatened to shoot Mr. Fountain, that Defendant patted the gun on his side, and that he addressed the death of Mr. Fountain's mother. She informed the jury that Defendant and Mr. Fountain argued and that she and Mr. Fountain were packing to leave the residence.

Given the cumulative and corroborative nature of the testimony, it is clear that even had Ms. Dickerson's testimony been improperly admitted, any such error would constitute harmless error. *See Spell*, 399 So.2d 551. Furthermore, that testimony was specifically not included within Defendant's Motion for New Trial. Accordingly, we find no abuse of discretion in a determination that Defendant failed to establish that he suffered an injustice so as to require a new trial pursuant to La.Code Crim.P. art. 801. *See also* La.Code Crim.P. art. 851.

This assignment lacks merit.

## CONCLUSION

For the foregoing reasons, the conviction of Defendant, Frin Wayne Coward, is affirmed.  This matter is remanded for sentencing.

**CONVICTION AFFIRMED.  REMANDED FOR SENTENCING.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.